UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JKAYC, LLC,

    Plaintiff,

  v.

NOAH BANK,

    Defendant.

Civ. No. 1:20-cv-943-PKC-SMG

Return Date: November

_____

# PLAINTIFF JKAYC, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISQUALIFY COUNSEL

_____

THE BASIL LAW GROUP, P.C.
*Attorneys For Plaintiff, JKAYC, LLC*
32 EAST 31ST STREET, 9TH FLOOR
NEW YORK NY 10016
917-994-9973

Dated October 25, 2020

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT AND STATEMENT OF FACTS ……..1

II. LEGAL ARGUMENT ……………………………………………….3

    A. The Disfavored Nature of Disqualification Motions in This Circuit……………………………………………………………..3

    B. Weighing of the Impact and Equities of Disqualification on Each Party Requires that this Application be Denied.………………..4

    C. Noah Bank has not Established That the Prior Representation of Noah Bank by TBLG was "Substantially Related" to the Matters at Issue in this Action……………………………………………………...6

    D. Noah Bank Failed to Establish that the Continued Representation of JKAYC by TBLG Would "Taint" the Trial of This Action. …..8

    E. The Equitable Remedy of Disqualification is not Available to Noah Bank due to its Unclean Hands. ……………………………….10

    F. The Tactical Nature of Noah Bank's Application Requires that its Motion to Disqualify TBLG be Denied......................................11

    G. The Relationship Between TBLG and Jerry J. Kim Does not Require Disqualification of TBLG.……………………………………..13

   III. CONCLUSION …………………………………………………16

# TABLE OF AUTHORITIES

*CASES*

*ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317 (1994)……………………….…10

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
    160 F. Supp. 2d 657 (S.D.N.Y. 2001)…………………………………..……3

*Bd. of Educ. of the City of N.Y. v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979)…8 9, 12

*Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.*,
    973 F.2d 349 (4th Cir. 1992)……………………………………………….……11

*Etna Prods. Co. Inc. v. Tactica Int'l*, 234 F. Supp. 2d 442 (S.D.N.Y. 2002)……..8

*Evans v. Artek Systems Corp.*, 715 F.2d 788 (2d Cir. 1983)………………….......3

*Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746 (2d Cir. 1981)……………………9

*Gov't of India v. Cook Indus.*, 569 F.2d 737 (2d Cir. 1978)……………………6, 7

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
    409 F.3d 127 (2d Cir. 2005) ……………………………………………8, 14

*In re AppOnline.com, Inc.*, 128 Fed Appx 171 (2d Cir. 2004)…………………...10

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    438 F. Supp. 2d 305 (S.D.N.Y. 2006)………………………………….........9

*Med. Diagnostic Imaging v. Carecore National LLC*,
    542 F. Supp. 2d 296 (S.D.N.Y. 2008)……………………………………...9

*Occidental Hotels Mgmt. B.V. v. Westbrook Allegro LLC*,
    440 F. Supp. 2d 303 (S.D.N.Y. 2006)……………………………………….9

*Reilly v. Computer Associates Long-Term Disability Plan*,
    423 F. Supp. 2d 5 (E.D.N.Y. 2006) …………………………….......6

*Shabbir v Pakistan Intern. Airlines*, 443 F. Supp. 2d 299 (E.D.N.Y. 2005)………3

*Solow v W.R. Grace & Company,* 83 N.Y.2d 303 (1996)…………………………..8

*Starter Corp. v. Converse Inc.*, 170 F.3d 286 (2d Cir 1999)……………………11

*U.S. Football League v. Nat'l Football League*,
    605 F.Supp. 1448 (S.D.N.Y. 1985) ……………………………………....6

*Universal City Studios v. Reimerdes*, 98 F. Supp. 2d 449 (S.D.N.Y. 2000)….8, 11

<u>Other Authority</u>

American Bar Association Standing Committee on Ethics and Professional Responsibility - Formal Ethics Opinion 90-357…………………………………14

*Fed. R. Evid.* 408 ……………………………………………………..……10

*New York Rules of Professional Conduct,* Comment 3 to Rule 1.9 ……………...7

*Restatement Third of Law Governing Lawyers* § 132 (2000) ……………………7

I.      <u>PRELIMINARY STATEMENT AND STATEMENT OF FACTS</u>

This brief is submitted on behalf of Plaintiff, JKAYC LLC ("JKAYC") and in opposition to the pending motion to disqualify The Basil Law Group ("TBLG") and Robert J. Basil as counsel for JKAYC in this matter. This motion comes nearly one year after the matter was originally filed, and nine months after it was removed to this Court.

Noah Bank's motion founders not only on factual matters, but also upon the applicable principles set out by the federal courts, especially those federal courts located in the Second Circuit. Most important of all these principles is the weighing of the equities and impacts of disqualification on the parties. As will be demonstrated, JKAYC would be severely prejudiced if it lost its counsel at this late stage of the litigation. Noah Bank, contrarywise, would suffer no cognizable prejudice.

The facts underlying JKAYC's opposition to this application are set out at considerable length in the various declarations submitted by JKAYC. Those facts will be repeated here only as necessary to illustrate the applicability of the legal principles underlying the dispositive issues.

JKAYC believes that the instant submission will be sufficient for the Court to make a well-reasoned decision on the matters presented. However, JKAYC

stands ready and willing to present evidence in testimonial form should the Court deem it necessary or desirable.

## II. LEGAL ARGUMENT

### A. The Disfavored Nature of Disqualification Motions in This Circuit.

JKAYC long ago made its choice of counsel in this matter. That choice was based upon the performance and reputation of TBLG. Declaration of Chung K. Lee, ¶ 10. Due to the considerations generally attendant to an affected party's resistance to a disqualification motion, but as amplified by the repercussions of the pandemic and the resultant financial difficulties visited upon JKAYC and its owners as a result, JKAYC's choice of counsel should deemed irreversible.

Disqualifying a party's counsel in a federal action is a "drastic measure." *See, e.g., A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F. Supp. 2d 657, 662–63 (S.D.N.Y. 2001). Motions to disqualify counsel are uniformly viewed by the federal courts in general, and the Second Circuit in particular, with "disfavor." *See, e.g., Shabbir v Pakistan Intern. Airlines*, 443 F. Supp. 2d 299, 305 (E.D.N.Y. 2005). As a result, these motions are subjected to a high standard of proof in large part because they are often misused as a litigation tactic. *See Evans v. Artek Systems Corp.*, 715 F.2d 788, 791–92 (2d Cir. 1983) (noting "high standard of proof" for disqualification motions because they are "often interposed for tactical reasons"). The Second Circuit has described the burden on a party moving to obtain disqualification of another party's chosen counsel as a "heavy burden of proving facts required for disqualification." *Id.* at 794.

In the instant case, Noah Bank's long-delayed application, supposedly based upon the "discovery" of a form of lease rider drafted by TBLG for Noah Bank, is patently tactical. Indeed, Noah Bank has identified no information that was acquired by TBLG during its representation of Noah Bank that could have any impact upon this litigation, let alone possessing such a powerful impact as to prejudice Noah Bank to a degree mandating belated disqualification of JKAYC's chosen counsel.

As a threshold matter, an attorney may be disqualified in the Second Circuit only if (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his prior representation of the client. *See Evans*, 715 F.2d at 791. As factor (1) is beyond dispute, this Court's focus must be upon the remaining two factors. Even if the last two factors were satisfied, other considerations applicable to disqualification applications such as the one at bar must be considered, as demonstrated below.

    B. Weighing of the Impact and Equities of Disqualification on Each Party Requires that this Application be Denied.

Noah Bank has not presented a substantial, negative impact it will suffer if TBLG continues to represent JKAYC. Instead, Noah Bank presented only its

speculative fears that TBLG might have learned something during its tenure as collection attorneys for Noah Bank that would create some undefined and undescribed prejudice to Noah Bank in the future. Noah Bank has identified no prejudice that it has suffered to date even though TBLG has been representing JKAYC in this case for one year.

By contrast, the negative impact upon JKAYC of requiring it to obtain replacement counsel is both well stated under oath by its manager, Chung K. Lee, but is also patently compelling. Declaration of Chung K. Lee, ¶¶ 3-12. Indeed, it is not clear that JKAYC will be able to obtain replacement counsel at all. Declaration of Chung K. Lee, ¶ 12.

It is not Noah Bank's fault that there are a pandemic and unprecedented difficulties facing small New York City businesses such as JKAYC. However, JKAYC now has a vacant commercial building producing zero revenue during the most difficult time for finding commercial tenants in the city's history *precisely* due to Noah Bank's alleged lack of good faith and fair dealing toward JKAYC.

The cost to JKAYC of hiring replacement counsel is both high and likely prohibitive. The Courts in the Second Circuit have been warned to be wary of disqualification under such circumstances. "Disqualification of an attorney imposes a substantial transaction cost on a party. The affected party incurs the costs associated with finding a new attorney who must then become familiar with

the matter." *Reilly v. Computer Associates Long-Term Disability Plan*, 423 F. Supp. 2d 5, 7 (E.D.N.Y. 2006) (citing *Gov't of India v. Cook Indus.*, 569 F.2d 737, 739 (2d Cir. 1978)).

Here, all discovery was completed by TBLG except for depositions. JKAYC has incurred considerable costs as TBLG investigated the facts of this case through FOIA demands and subpoenas served upon various governmental agencies, as well as upon interviews of potential witnesses. It has also incurred the costs of completed interrogatory and document production. Bringing new counsel up to speed would be a significant task and would substantially inflate the cost of this litigation for JKAYC, which has already exceeded JKAYC's expectations. Declaration of Chung K. Lee, ¶ 4. These facts counsel against disqualification.

> C. Noah Bank has not Established That the Prior Representation of Noah Bank by TBLG was "Substantially Related" to the Matters at Issue in this Action.

No "substantial relationship" has been established between TBLG's former representation of Noah Bank and its current representation of JKAYC, as that term is defined under federal law. A "substantial relationship" exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation. *See U.S. Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1459–60 & n. 25 (S.D.N.Y. 1985) ("It is the congruence of factual matters, rather than areas of law, that establishes a substantial relationship between

representations for disqualification purposes."). Speculation that there might be some connection between the two representations is not enough to warrant disqualification. The party seeking disqualification must present proof of substantial similarity that is "patently clear." *Gov't of India,* 569 F.2d at 739-40.

Comment 3 to Rule 1.9 of the *New York Rules of Professional Conduct* provides further guidance on the nature of "substantial similarity" stating that matters are "substantially related" if they involve the same transaction or legal dispute or if, under the circumstances, a reasonable lawyer would conclude that there is otherwise a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. No such "confidential factual information" has been identified by Noah Bank.

The *Restatement Third of Law Governing Lawyers* § 132, comment d(iii) (2000), is also informative: "The substantial-relationship test ... focus[es] upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation." Noah Bank has presented nothing that could satisfy this standard.

Noah Bank has not demonstrated that the requisite "substantial relationship" exists between TBLG's current and former representations, because it could not

establish that there was any confidential information, useful in this litigation or otherwise, obtained by TBLG during its representation of Noah Bank. *Cf. Solow v W.R. Grace & Company,* 83 N.Y.2d 303, 313 (1996) ("to apply the remedy of disqualification when there is no realistic chance that confidences were disclosed would go far beyond the purposes of a strict disqualification rule"). Accordingly, Noah Bank has failed to carry its "heavy burden" to establish the facts necessary to establish a "special relationship" under the standards applicable to its disqualification application.

### D. Noah Bank Failed to Establish that the Continued Representation of JKAYC by TBLG Would "Taint" the Trial of This Action.

When a district court considers a motion to disqualify, it must always weigh two important competing interests: a party's right to choose and retain its preferred counsel, and the court's need to preserve the integrity of the adversarial process. *See Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005); *Evans*, 715 F.2d at 791. While the court has an interest in "preserv[ing] the integrity of the adversary process," *Bd. of Educ. of the City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979), it is not generally interested in policing the ethics rules. *See*, *Universal City Studios v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000). Rather, that role is better left to specialized professional-disciplinary bodies. *Etna Prods. Co. Inc. v. Tactica Int'l*, 234 F. Supp. 2d 442, 445 (S.D.N.Y. 2002). Consequently, disqualification is appropriate only where

allowing the representation to continue would pose "a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). Thus, even if this Court were to find that the *Evans* factors had been fulfilled, it must still deny Noah Bank's disqualification motion because the risk of trial taint has not been shown to be substantial. *See, e.g.*, *Med. Diagnostic Imaging v. Corecare Nat. LLC*, 542 F. Supp. 2d 296 at 314-15 (S.D.N.Y. 2008) ("[T]he question of taint is the ultimate question the Court must answer.") (*citing Nyquist*, 590 F.2d at 1246; *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro LLC*, 440 F. Supp. 2d 303, 309 (S.D.N.Y. 2006)). Demonstrating a risk of trial taint is a heavy burden, and one that requires an affirmative showing by the moving party. *See, e.g., In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 438 F. Supp. 2d 305, 309 (S.D.N.Y. 2006).

Noah Bank's thin submission failed to establish sufficiently, if at all, that impermissible "taint" will follow if TBLG were not disqualified. Since Noah Bank lacked evidence of actual impropriety, it has attempted to show an appearance of impropriety to satisfy its burden of proof. Such an attempt, even if it had not been unsuccessful, would be insufficient to warrant disqualification. *Nyquist*, 590 F.2d at 1247 ("appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases"). Accordingly, Noah Bank's application should be denied.

E. The Equitable Remedy of Disqualification is not Available to Noah Bank due to its Unclean Hands.

As Noah Bank's application seeks equitable relief, equitable principles must be applied. *In re AppOnline.com, Inc.*, 128 Fed Appx 171, 172 (2d Cir. 2004). These principles including the federal doctrine of unclean hands. "The 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 329–30 (1994). Here, Noah Bank has already engaged in such "inequitableness" and "bad faith" regarding the representation of JKAYC by TBLG.

The facts of Noah Bank's inequitable conduct are set out in the Declaration of Robert J. Basil accompanying this brief. In short, Noah Bank imposed an unwarranted charge on the personal mortgage of Robert J. Basil and his wife, then offered to remove the unwarranted charge if TBLG consented to force JKAYC to accept a disfavorable settlement in this action. Declaration of Robert J. Basil, ¶¶ 62-68. The inequitable nature of such conduct, even if the mortgage charge had been warranted against Mr. Basil and his wife, could not reasonably be disputed.

The fact that Noah Bank's inequitable conduct occurred during settlement discussions that are potentially subject to *Fed. R. Evid.* 408, does not affect this Court's consideration of these same settlement communications. "Settlement

offers are only inadmissible when offered to prove liability or damages. *See Fed.R.Evid*. 408." *Coakley & Williams Const., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353 (4th Cir. 1992).

Although offers to settle a claim and statements made during settlement negotiations regarding a claim are not admissible to establish liability for, invalidity of, or amount of that claim, evidence of settlement negotiations may, in a district court's discretion, be admitted if offered for another purpose. *See, e.g., Starter Corp. v. Converse Inc.*, 170 F.3d 286, 293–94 (2d Cir. 1999) (upholding admission of evidence to prove claims of contractual and equitable estoppel based on representations made during settlement negotiations). Accordingly, Noah Bank's misconduct during settlement negotiations is "fair game" for this Court's consideration in reviewing its application to disqualify TBLG.

F. The Tactical Nature of Noah Bank's Application Requires that its Motion to Disqualify TBLG be Denied.

The tactical nature of Noah Bank's long-delayed motion to disqualify TBLG is, ironically, disqualifying itself. *See Universal City Studios, Inc. v. Reimerdes*, 98 F.Supp.2d at 455 (S.D.N.Y. 2000) (warning against tactical use of disqualification motions); *See also, Evans*, 715 F.2d at 791–92 (noting "high standard of proof" for disqualification motions because they are "often interposed for tactical reasons").

Perhaps the best articulation of the dispositive principle that should be applied to Noah Bank's tactical application comes from the concurring opinion in *Nyquist*:

> The attorney is the client's choice. Disqualification is wasteful and time-consuming. Only where the attorney's unprofessional conduct may affect the outcome of the case is there any necessity to nip it in the bud. Otherwise conventional disciplinary machinery should be used and, if this is inadequate, the organized bar must assume the burden of making it effective as a deterrent.

*Nyquist*, 590 F.2d at 1247–48 (2d Cir. 1979) (Mansfield, Circuit Judge (concurring)). This Court should, therefore, summarily reject this tactical maneuver and set this case back on its path to timely conclusion.

In this case, all information submitted to this Court to support Noah Bank's application to disqualify TBLG was known to Noah Bank before the litigation began, with the possible exception of the drafting of a form by TBLG for use in the lease at issue. It is also undisputed that while Mr. Basil was drafting this form lease rider, he was not aware of the fact that JKAYC was involved, nor was the identification of the leasehold known to him. Declaration of Robert J. Basil, ¶¶ 27-29. Noah Bank never claimed otherwise, let alone provided proofs. Accordingly, the tactical nature of Noah Bank's reliance upon this "new evidence" to demonstrate "taint" is revealed and should result in denial of its application for disqualification.

### G. The Relationship Between TBLG and Jerry J. Kim Does not Require Disqualification of TBLG.

Noah Bank attempts to overcome its inability to identify confidential information disclosed to TBLG during its representation of Noah Bank related to any matter at issue in this action. Noah Bank argues that Jerry Kim is disqualified and that because Jerry Kim is disqualified that TBLG is automatically disqualified "because of the relationship between Mr. Kim and TBLG." Noah Bank brief, p. 4. This argument lacks sufficient evidentiary support.

Noah Bank has not carried its burden to prove that Jerry Kim would be barred from representing JKAYC in this matter. The only factual issues of consequence in this case are those related to Noah Bank's efforts, or lack of efforts to obtain regulatory approvals necessary to move forward with occupancy of the JKAYC property. Jerry Kim received no such information from Noah Bank, and was terminated before the period to undertake such actions ended. As Jerry Kim swore, "I was not involved or consulted in such matters while acting as counsel to Noah Bank, and received no information, confidential or otherwise, from Noah Bank concerning those matters." Kim Declaration, ¶ 28.

Even if Noah Bank had established that Mr. Kim was subject to disqualification, it has failed to demonstrate that the "relationship" between Mr. Kim and TBLG imputes Mr. Kim's putative disqualification to TBLG. The

designation of "of counsel" does not imply membership in a firm. Indeed, an attorney may be designated as "of counsel" to multiple firms simultaneously. In its Formal Ethics Opinion 90-357, the American Bar Association Standing Committee on Ethics and Professional Responsibility concluded that a lawyer may be "of counsel" to multiple law firms, without limit, provided that the association with each is "close, regular [and] personal." *Id.* In addition, an "of counsel" relationship is not disqualifying in this Circuit merely because the firm may be disqualified.

> Several district courts in this circuit have refused to disqualify an attorney or a law firm on the grounds of an "of counsel" relationship. *See Regal Mktg., Inc. v. Sonny & Son Produce Corp.*, No. 01–1911, 2002 U.S. Dist. LEXIS 14069, at *20–21 (S.D.N.Y. July 31, 2002) (denying buyer's motion to disqualify seller's attorney on the basis of his "of counsel" affiliation with buyer's former attorney); Renz v. Beeman, 1989 U.S. Dist. LEXIS at *6–7; *Rossman v. Shapiro*, 653 F.Supp. 1441, 1447 (S.D.N.Y.1987) (finding no appearance of impropriety with respect to an "of counsel" relationship). Those decisions instruct that "an attenuated relationship between a lawyer and a law firm will be insufficient to make the attorney a member of that firm for purposes of an attorney disqualification motion, regardless of an attorney's 'of counsel' label." *Regal Mktg.*, 2002 U.S. Dist. LEXIS 14069, at *17 (citing Renz, 1989 U.S. Dist. LEXIS 1784 at *6–7).

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 2004 WL 62560, at *6 (E.D.N.Y. Jan. 12, 2004), *aff'd*, 409 F.3d 127 (2d Cir. 2005).

In this case, the facts demonstrate that Mr. Kim acted independently of TBLG in general, and specifically in this case. Mr. Kim has his own Tax ID, bank

accounts, malpractice carrier, and accountant. Kim Declaration ¶ 8. Furthermore, Mr. Kim states in his declaration that "TBLG and I have always been separate entities in every significant aspect and were so throughout the period when I represented Noah Bank." Kim Declaration ¶ 7. Notably, Mr. Kim adamantly rebutted Glen James' accusation that TBLG held out Mr. Kim as a member of TBLG, stating that "[in] many instances when I was with Mr. Basil and Mr. James, as well as with other officers or employees of Noah Bank, Mr. Basil never stated or implied that I was a member of TBLG. Had such a statement been made, I would have corrected it immediately." Kim Declaration ¶ 11. Finally, Mr. Kim points out that "I was an attorney for Noah Bank before TBLG began to represent Noah Bank, so there could have been no legitimate confusion about my operating on my own and not as a member of TBLG." Kim Declaration ¶ 12.

Mr. Kim's declaration repudiates the factual basis for Noah Bank's motion that Mr. Kim did not act independently of TBLG.

III.     CONCLUSION

For all of the reasons stated in this brief, as well as in the supporting declarations, Noah Bank's motion to disqualify counsel for JKAYC should be denied.

> Respectfully submitted,
>
> The Basil Law Group, P.C.
> 32 East 31st Street, 9th Floor
> New York, NY 10016
> (917) 994-9973
>
>
> By:    /S *Robert J. Basil*
> Robert J. Basil
> robertjbasil@rjbasil.com

Dated: October 25, 2020