```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JKAYC, LLC,                                          :
                          Plaintiff,                 :
                                                     :
       -against-                                     :      MEMORANDUM &
                                                     :      ORDER
                                                     :      20-CV-943 (PKC) (SMG)
NOAH BANK,                                           :
                          Defendant.                 :
------------------------------------------------------------------- x
```
GOLD, STEVEN M., U.S. Magistrate Judge:

### INTRODUCTION

Plaintiff JKAYC, LLC, ("JKAYC") brings this suit alleging that defendant Noah Bank breached an agreement to lease commercial property from JKAYC located in Queens, New York (the "Property"). Compl. ¶¶ 1, 4. Dkt. 2. The lease agreement (the "Lease" or "Lease Agreement") anticipated that Noah Bank, after performing certain construction work on the premises, would operate a bank branch at the Property. Compl. ¶¶ 5–6. Noah Bank, however, announced that it was "exercising its right" to terminate the lease and never took occupancy. Compl. ¶ 11. JKAYC, in addition to its claim for breach of the Lease Agreement, sues for breach of the covenant of good faith and fair dealing. Compl. ¶¶ 27–29. In response, Noah Bank has asserted breach of contract, unjust enrichment, and conversion counterclaims, seeking repayment of a $400,000 security deposit it paid to JKAYC that the Bank claims should now be returned because the Lease was terminated. Answer & Counterclaims ¶¶ 4–12, Dkt. 7.

Now pending before the Court is Noah Bank's motion to disqualify JKAYC's counsel, Robert J. Basil and his law firm, the Basil Law Group, P.C. ("BLG"). Dkt. 19. Noah Bank asserts that disqualification is warranted because of the following conflicts of interest: 1) Noah Bank was formerly a long-time client of BLG (and BLG continues to represent Noah Bank's

former president, Edward Shin, in the wake of his separation from the Bank in May 2019); 2) Jerry Kim, a lawyer who identified himself out as "Of Counsel" to BLG and was "held out" as a member of BLG, represented Noah Bank throughout the Lease negotiations, and his conflict is imputed to BLG; and 3) BLG, specifically Basil, performed legal work on behalf of Noah Bank in connection with the Lease. Def.'s Mem. in Supp. of Mot. to Disqualify ("Mem. in Supp.") at 1–4, Dkt. 19-1; Shin Decl. ¶ 3, Dkt. 28-4. JKAYC opposes the motion, maintaining that BLG's prior representation of Noah Bank was not "substantially related" to the issues presented by this suit, and that Kim has an individual law practice and any conflicts he might have are not properly imputed to BLG. Pl.'s Mem. in Opp. to Mot. to Disqualify ("Mem. in Opp.") at 6–8,13–15, Dkt. 28. JKAYC also argues that disqualifying its counsel "nearly a year after the matter was originally filed, and nine months after it was removed to this Court" would severely prejudice JKAYC's ability to litigate this suit. *Id.* at 1–6; *see also* Lee Decl., Dkt. 28-2.

For the following reasons, Noah Bank's motion to disqualify Basil and BLG from representing JKAYC in this lawsuit is granted.

## FACTS

Plaintiff JKAYC is represented in this action by Robert J. Basil and David Cohen of BLG. As noted by defendant Noah Bank's general counsel, however, BLG, and Basil in particular, "have acted as outside counsel to Noah Bank on a number of matters over a long period of time." James Decl. ¶ 2, Dkt. 19-2.

Jerry J. Kim represented Noah Bank in connection with negotiating and drafting the Lease at issue in this lawsuit. *Id.* ¶ 4. According to Noah Bank, BLG "held out Mr. Kim as a member of its firm." *Id.* ¶ 5. During the relevant time, Kim shared office space with BLG. Kim Decl. ¶ 6, Dkt. 28-1. As discussed in greater detail below, moreover, Kim copied Basil on

certain relevant emails and sought Basil's assistance in connection with drafting a rider to the Lease.  *See id.* ¶¶ 25–26.

The Lease was executed on October 19, 2018.  Compl. ¶ 4.  Of particular significance here, the Lease provided that "Noah would be responsible for obtaining any and all federal and state regulatory approvals, licenses, and permits required to conduct Noah's banking business" on the premises, and that, if Noah was unable to obtain the required approvals by October 19, 2019, the Lease would automatically terminate.  Compl. ¶¶ 6(e) and (f).  In support of its claim for breach, plaintiff JKAYC alleges that Noah Bank intentionally failed to obtain the required regulatory approvals for the purpose of manufacturing a basis for avoiding its obligations under the Lease.  Compl. ¶ 10.  Noah Bank denies this allegation, *see* Answer & Counterclaims ¶¶ 9–10, and this is the central dispute in the lawsuit.

The President and Chief Executive Officer of Noah Bank when the Lease was being negotiated and when it was executed was Edward Shin.  Shin Decl. ¶ 1.  Shin continued in that capacity until May 29, 2019—seven months into the year during which Noah Bank was required by the Lease to obtain the approvals at issue—when he was arrested and charged with various crimes.  Shin Decl. ¶ 4.

At the time of Shin's arrest, BLG was representing Noah Bank in approximately twenty matters and Shin in three, including a personal injury matter pending before this Court.  Basil Decl. ¶¶ 31–32, Dkt. 28-3.  BLG had also "successfully defended Noah Bank and Mr. Shin in a recent civil RICO case."  *Id* ¶ 34.  "Having counted Mr. Shin as a firm client in multiple contexts, and having actively represented him in other civil matters, [BLG] decided it was its duty to represent Mr. Shin in his criminal matter."  *Id.* ¶ 36.  Although he describes his practice as focused primarily on transactional work as opposed to litigation, Kim joined Shin's criminal

3

defense team as well. Kim Decl. ¶¶ 3, 13. On June 14, 2019, Noah Bank's General Counsel sent a single email to both Basil and Kim advising them that the bank's Board had decided to terminate their representation of the bank. Basil Decl. ¶ 42.[1]

The civil complaint in this action, suing Noah Bank on behalf of JKAYC, is signed by Basil for BLG and dated November 18, 2019.

## DISCUSSION

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006). The Second Circuit has counselled "reluctance in granting motions to disqualify counsel," on account of the "immediate adverse effect on the client by separating him from counsel of his choice." *Id.* (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)). The Circuit has pointed out that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). Rather, "[d]isqualification is warranted only where an attorney's conduct tends to taint the underlying trial…[such as] when an attorney ... might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party." *DeFazio*, 459 F. Supp. 2d at 163 (internal quotation marks and citations omitted) (quoting *Nyquist*, 590 F.2d at 1246 and *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). Still, "any doubt is to be resolved in favor of disqualification." *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 303 (E.D.N.Y. 2010) (quoting *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)).

---

[1] Although the Basil Declaration states that Basil and Shin were terminated on June 14, 2020, it includes an email dated June 14, 2019 from Glenn James announcing the termination. The context and email together make it clear that the Basil Group and Kim were terminated as counsel for Noah Bank on June 14, 2019. *See* Basil Decl. ¶ 42.

4

In cases of successive representation, an attorney may be disqualified if three conditions are met:

> (1) the moving party is a former client of the adverse party's counsel;
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video*, 409 F.3d at 133.[2] "[T]here is a substantial relationship between the two representations if facts pertinent to problems for which the original legal services were sought are relevant to the subsequent litigation." *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985). With respect to the third factor, whether the attorney had access to privileged information, "all that need be shown is a likelihood or probability." *Cole Mech. Corp. v. Nat'l Grange Mut. Ins. Co.*, 2007 WL 2593000, at *6 (S.D.N.Y. Sept. 7, 2007).

Here, it is undisputed that BLG was representing Noah Bank and its President and Chief Executive Officer, Shin, until approximately five months before this lawsuit was filed, and that it continues to represent Shin to this day. *See* Basil Decl. ¶¶ 31–42; James Decl. ¶¶ 2–3. The first prong of the test for disqualification is accordingly satisfied.

There is also little or no dispute regarding the subject matter of the present lawsuit. Although they frame the issue somewhat differently, the parties essentially agree that the central question in this lawsuit is whether Noah Bank attempted in good faith but nevertheless failed to secure the approvals it required to open a branch on the Premises, or whether Noah deliberately

---

[2] Relatedly, under the New York Rules of Professional Conduct, a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." N.Y. Rule of Prof'l Conduct 1.9.

elected not to obtain those approvals so that it would have a purported basis for terminating the Lease. *See* Mem. in Supp. at 2; Mem. in Opp. at 13.

The parties do dispute, however, whether BLG's prior representations of Noah Bank bear a substantial relationship to the issues in this case, and whether attorneys at BLG likely had access to relevant privileged information during the time they were representing Noah Bank. In support of its motion, Noah Bank submits evidence that it contends demonstrates that these prongs of the test for disqualification are met. In particular, Noah Bank points to two email exchanges from "Mr. Basil's own file" that JKAYC disclosed in the course of discovery and that Noah Bank states triggered the present disqualification motion. Zampino Decl. ¶ 5, Dkt. 19-3. One disclosed email exchange reveals that Kim forwarded to Basil attorney-client communications with Noah Bank (specifically with Shin, when he was still the president of the bank) relating to the negotiation of the Lease Agreement; Kim forwarded this communication in connection with a request that Basil draft a rider to the Lease. *See* Zampino Ex. D at ECF pages 10–11, 18–21, Dkt. 24. The rider Basil sent back to Kim was incorporated in the final version of the Lease and contains language relating to the time within which Noah Bank must complete the construction at the Property, for which it was required by the Lease to obtain the disputed regulatory approvals. *See id.* at 18; Compl. ¶¶ 6(j)–7. A second email exchange shows that Basil was copied on an email between Shin and Kim, in which Shin comments on the Lease Agreement as well as on another potential location for a bank branch in Manhattan, noting that he "[h]ope[s] we can get Manhattan Branch space with good price." Zampino Ex. D at 16–17.

These exchanges demonstrate at least some relationship between BLG's prior representation of Noah Bank and the issues raised in this lawsuit. *See Cole Mech. Corp.*, 2007 WL 2593000, at *6 (finding representation substantially related where attorney had been

"engaged by both [parties] in connection with the very same construction project"). Whether Noah Bank could complete construction within the time set forth in the rider drafted by Basil would depend in part on when it secured the permits and approvals required for construction and for permission to operate a bank branch at the Property. Shin's enthusiasm about the opportunity to open a bank branch in Manhattan may also be relevant to whether Noah Bank was motivated to find a way out of the Lease Agreement for the Property in Queens. *See* Reply Mem. at 6, Dkt. 29; Zampino Reply Ex. F. at 10, 12, Dkt. 29-2.

These email exchanges, though, are not the only indications that BLG, and Basil in particular, represented Noah Bank in connection with matters related to the issues in this lawsuit and likely had access to privileged information as a result. As noted above, in mid-2019, during the time when Noah Bank was obligated by the Lease to be seeking the permits and regulatory approvals at issue, BLG was representing Noah Bank in twenty matters and Shin in three. The attorney-client relationship between BLG and Shin, Noah Bank's President and CEO during this critical time, was so close that, when Shin was arrested, BLG surrendered its relationship with Noah Bank so that it could take on Shin's criminal defense. *See* Basil Decl. ¶¶ 36–37. Under these circumstances, it seems very likely that Basil and other lawyers at BLG became aware of privileged information regarding whether or not Noah Bank was making a good faith effort to obtain the permits and other approvals it was required to secure under the Lease.

Basil does attest in his declaration that he did not speak to Shin or anyone else about Noah Bank's efforts to obtain the regulatory approvals at issue. *Id.* ¶ 53. Similarly, Shin asserts that he delegated responsibility for obtaining the approvals and was not involved in the process. Shin Decl. ¶ 9. While these statements may be true, that does not end the matter; that no one at Noah Bank spoke with Basil about the permits and approvals may in and of itself indicate that

the bank did not make a good faith effort to obtain them, depending on what bank officials regularly did discuss with Basil. The subjects that bank officials regularly did discuss with Basil would, of course, be privileged information acquired by Basil during the course of his prior representation of the bank.

More significantly, these statements of Basil and Shin do not address a related core issue: whether Basil and BLG had access to privileged information regarding Noah Bank's motives to avoid its obligations under the Lease. For example, Basil acknowledges that he twice served as an official at Noah Bank's annual shareholders' meetings and met from time to time with bank officers and directors "concerning various bank matters, almost entirely regarding litigation matters." Basil Decl. ¶ 49. Noah Bank's financial condition, a likely subject when preparing for a shareholder's meeting or discussing how to react to or manage a litigation, might well bear upon its motives for completing or avoiding its obligations under the Lease. Basil also acknowledges that, at the time of Shin's arrest, he and BLG had recently defended Noah Bank and Shin in a civil RICO case. Basil Decl. ¶ 34. Privileged information about the bank's exposure in a civil RICO case, not to mention the impact on the bank of the criminal charges brought against Shin in mid-2019, would also likely be relevant to its motives with respect to the Lease.

Basil attempts to assure the Court that he has no knowledge of any privileged information relevant to this lawsuit, Basil Decl. ¶ 54, and the Court has no reason to doubt Mr. Basil's good faith. But given Basil's extensive involvement in the affairs of Noah Bank and those of Shin during the time period critical to the issues in this case, the likelihood that he was exposed to relevant privileged information is sufficiently great to warrant his disqualification. As noted

above, even a likelihood or probability of access to relevant privileged information suffices to warrant disqualification.  *See Cole*, 2007 WL 2593000, at *6.

Having concluded that Basil and BLG should be disqualified, the Court need not consider whether the conflicts created by Kim's representation of Noah Bank in the lease negotiations should be imputed to BLG based on his "of counsel" position in the firm.  However, Kim's willingness to involve Basil in his work—both by copying him on emails and asking him to draft a rider to the Lease—suggests that Kim's legal practice was so closely affiliated with BLG and Basil that Kim's conflicts may be imputed to BLG, particularly in light of the fact that Kim and BLG shared an office space, Kim included Basil's name on his letterhead, and BLG appears to have charged Noah Bank for Kim's legal services on a single invoice listing both Kim's and Basil's hours.  Kim Decl. ¶ 6; Zampino Ex. C, Dkt. 19-3; James Reply Ex. A, Dkt. 29-1.  *See also* Ltr. from BLG to Noah Bank dated June 8, 2019, Basil Ex. A, Dkt. 28-3 ("The Firm, for the[] purposes [of representing Mr. Shin in a criminal matter], consists of *Robert J. Basil (Partner)*, David A. Cohen (Partner), and *Jerry J. Kim (of Counsel)*, Neil Grossman (of Counsel), and Sean Collier (of Counsel)" (emphasis added)).  Kim even indicates that he made a practice of copying Basil on emails because of BLG's superior document retention system, *see* Kim Decl. ¶ 26, which appears to be yet another avenue through which Basil likely acquired relevant privileged information.  *See Hempstead Video*, 409 F.3d at 135 ("The closer and broader the affiliation of an 'of counsel' attorney with the firm, and the greater the likelihood that operating procedures adopted may permit one to become privy, whether intentionally or unintentionally, to the pertinent client confidences of the other, the more appropriate will be a rebuttable imputation of the conflict of one to the other.").  Finally, as discussed above, Kim—though by his own description not a litigator—joined Basil as a member of Shin's criminal

defense team after Shin's arrest, suggesting both a close working relationship with BLG and a long-term and ongoing attorney-client relationship with Shin.  For all these reasons, I conclude that Kim's conflicts are properly imputed to BLG and provide an additional basis for the firm's disqualification.

Finally, JKAYC's argument that it will be severely prejudiced if its counsel is disqualified, *see* Mem. in Opp. at 4–6, is unpersuasive.  For one, this litigation is not so far along that new counsel cannot be easily brought up to speed; discovery is in its early stages and depositions have not yet begun.  *Id.* at 6; Reply Mem. at 2.  In addition, it seems that any difficulty JKAYC now faces in obtaining new counsel could have been avoided; before this suit was filed, and prior to Noah Bank's receipt of the emails that inspired this motion, Noah Bank apparently sent two letters to JKAYC's lead counsel stating the BLG had a conflict of interest in this matter because Kim "represented Noah Bank in connection with the negotiation of the JKAYC lease at issue" and because of "Basil's extensive prior representation of Noah Bank."  Zampino Decl. ¶¶ 2–4.  Still, despite having been informed of these conflicts—and undoubtedly aware of the attendant risks of disqualification—JKAYC decided to retain BLG and authorize it to file this suit on its behalf.  Finally, the Court is confident that any reasonable additional time that new counsel for JKAYC might require to become familiar with the case will be provided.

## CONCLUSION

For the reasons set forth above, Noah Bank's motion to disqualify Robert J. Basil and BLG from representing JKAYC is granted. JKAYC shall seek new counsel and submit a letter to the Court reporting on its efforts by February 1, 2021.

/s/
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
January 4, 2021

*U:\#ECC 2019-2020\20-cv-943 JKAYC v. Noah Bank\20-cv-943 JKAYC v. Noah Bank FINAL.docx*